IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | CASE NO. 3:21 CR 732 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **KIRK SMITH,** | |
| | MEMORANDUM OPINION AND |
| Defendant. | ORDER |

### INTRODUCTION

This matter comes before the Court on Defendant Kirk Smith's Motion to Suppress all statements made in response to inquiries by law enforcement agents while in custody but assertedly without having been properly issued warnings pursuant to *Miranda v. Arizona*, 284 U.S. 436 (1966). (Doc. 28). Specifically – Smith argues that he did not make a knowing, intelligent, and voluntary waiver of his rights following *Miranda* warnings. *Id*. In its response, the Government argues Smith properly waived his rights considering the totality of the circumstances.

For the reasons discussed below, Smith's Motion is denied.

### BACKGROUND

Smith was arrested on September 24, 2021, on suspicion of sexually exploiting his son and distributing child pornography. (Doc. 30, at 2). To that end, law enforcement executed a search warrant on Smith's residence and Smith was questioned at his home by FBI agents. *Id*. He was then arrested. *Id*.; Doc. 28, at 2.

Agents took Smith into custody and asked him if he would agree to take a polygraph examination. (Doc. 28, at 2). Smith agreed. *Id*. Prior to commencing the polygraph interview, agents discussed the limited substantive scope of the forthcoming interview and told Smith that he

needed to be apprised of his rights before the interview began. (Doc. 28, Ex. A) (audio recording). After relaying to Smith the next steps, agents provided him with a digital waiver form, which was titled "Advice of Rights" and contained the following language:

> You have the right to remain silent.
>
> Anything you say can be used against you in court.
>
> You have the right to talk to a lawyer for advice before we ask you any questions.
>
> You have the right to have a lawyer with you during questioning.
>
> If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.
>
> If you decide to answer questions now without a lawyer present, you have the right to stop answering at any time.

(Doc. 28-2). Agents explained to Smith they could not interview him unless he was informed of his rights. (Doc. 28, Ex. A). An agent told Smith it would be inappropriate for the agents to give any legal advice to the effect of giving the interview on his defense. *Id*. Agents verified Smith had no difficulties understanding or comprehending English before handing him the waiver to review. *Id*.

Six seconds after law enforcement concluded the above-mentioned instructions, Smith stated he read the "Advice of Rights" waiver. *Id*. Agents followed up with Smith to note he affirmed his understanding of the waiver quickly. *Id*. Smith verbally confirmed he understood the waiver. *Id*. He then signed the waiver. *Id*. During the polygraph examination, Smith said he engaged in sexual contact with his toddler son. (Doc. 28-3, at 5).

Alongside his Motion to Suppress, Smith submitted a report from forensic psychologist Jeffrey Wendt, Ph.D., P.C., dated April 19, 2022. (Doc. 28-3). The report concludes Smith falls in the range of Borderline Intellectual Functioning, exhibits academic abilities at a grade level

2

equivalent of 5.4, and suffers from an anxiety disorder. *Id*. at 2-5. Dr. Wendt noted Smith is a high school graduate. *Id*. at 5. He had previously been read his rights in relation to his arrest on bigamy charges in 2019. *Id*. at 7. He is familiar with *Miranda* as a result of entertainment media. *Id*. And, notably, Smith was able to recite the key aspects of his rights from memory. *Id*.

## STANDARD OF REVIEW

The government bears the burden of proving the defendant "voluntarily, knowingly, and intelligently waived his rights to silence and counsel." *United States v. Bentley*, 726 F.2d 1124, 1128 (6th Cir. 1984). "Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly*, 479 U.S. 157, 169 (1986). "This means the government must establish that it was more likely than not that a defendant was read his *Miranda* rights and acknowledged that he had a right to remain silent." *United States v. Spaulding*, 446 F. Supp. 2d 789, 800 (N.D. Ohio 2006).

"'As the United States Supreme Court has observed, 'courts look to the totality of the circumstances to determine whether a confession is voluntary.'" *Id*. (quoting *Withrow v. Williams*, 507 U.S. 680, 693 (1993)). "In that regard, the *Withrow* Court found that relevant circumstances include: (1) police coercion; (2) duration of the interrogation; (3) location of the interrogation; (4) the defendant's maturity; (5) the defendant's educational background; (6) the defendant's physical condition and mental health; (7) and whether the defendant was informed of his or her *Miranda* rights." *Id.*

In *Garner v. Mitchell*, the Sixth Circuit recognized that when considering a *Miranda* waiver, "[t]he relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege,' but rather whether the

'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987)).

## DISCUSSION

Smith argues his *Miranda* waiver was involuntary in light of his intellectual and academic deficiencies, as well as anxiety, which prevented him from fully reading and comprehending the waiver he signed. (Doc. 28, at 2). Secondly, Smith argues he was incapable of understanding the consequences of waiving his rights. *Id*. In response, the Government argues that because police had no contemporaneous reason to believe Smith misunderstood the warnings, his *Miranda* waiver was effectively executed. (Doc. 30, at 5).

The Sixth Circuit's decision in *Garner* made plain the "*Miranda* waiver inquiry had two dimensions: voluntariness and comprehension." 557 F.3d at 263. The question becomes whether the police believed the waiver to be voluntary and comprehended. And, of import to the matter before this Court, "[t]he underlying police-regulatory purpose of *Miranda* compels that these circumstances be examined, in their totality, primarily from the perspective of the police." *Id*.; *see also United States v. Al-Cholan*, 610 F.3d 945, 954 (6th Cir. 2010) ("Accordingly, whether or not Al–Cholan truly understood the *Miranda* warnings, the agents certainly had no contemporaneous reason to doubt that he did. Our inquiry necessarily ends there.").

For the reasons discussed below, the Court finds Smith's *Miranda* waiver satisfies both dimensions of the inquiry and thus denies Smith's motion to suppress.

4

Voluntariness

To determine whether Smith's waiver was voluntary, courts consider seven factors. *Withrow*, 507 U.S. at 693; *see also, e.g.*, *Spaulding*, 446 F. Supp. 2d at 800. Each will be discussed in turn.

*Police coercion; Duration of the interrogation; Location of the interrogation*

Smith argues the location and duration of the interrogation, along with police coercion, exploited his particular vulnerabilities – namely, a need to please others along with an instinct to avoid conflict and an anxiety disorder. (Doc. 28, at 5-6). But the evidence before this Court does not show the voluntariness of Smith's waiver of rights was compromised by any of these factors.

"A prerequisite to finding that a defendant involuntarily waived his *Miranda* rights is some element of official coercion." *Wesson v. Shoop*, 17 F.4th 700, 704 (6th Cir. 2021). The Sixth Circuit held that "[a] waiver is coerced if '(i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.'" *Id*. (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)). Here, a review of the interview audio demonstrates that in the moments leading up to the interview, agents engaged in a thorough explanation of the forthcoming interview process, using an agreeable tone and without any indication of improper physical intimidation. (Doc. 28, Ex. A). Following the Sixth Circuit's reasoning in *Wesson*, no conduct of the law enforcement agents, nor reactions or representations by Smith, would suggest any police coercion took place (even taking as true Smith's account of the interview to Dr. Wendt). *See Wesson*, 17 F.4th at 704 ("That the officers placed Wesson in handcuffs . . . [and] sat close to him, did not create a coercive environment either . . . That one officer said another officer 'can get really mean' does not change this conclusion.'").

5

Indeed, the audio recording shows agents went as far as to decline giving Smith any degree of advice on the wisdom of participating in the polygraph interview, leaving the decision to Smith to make on his own volition. (Doc. 28, Ex. A).

Similarly, the duration and location of the interview both fall within the permissible and non-coercive. To that end, Smith was interviewed for "nearly two hours" in a law enforcement interview room. (Doc. 28, at 2). As detailed by the Sixth Circuit in *United States v. Mahan*, these circumstances fall well short of the threshold to find police coercion and an involuntary waiver of rights. 190 F.3d 416, 423 (6th Cir. 1999) (no police coercion where the interview lasted one and a half hours) (citing *United States v. Gatewood*, 184 F.3d 550 (6th Cir. 1999) (rejecting the defendant's claim that his confession was involuntary where it lasted only three and one half hours)). Further, the evidence does not show, and Smith does not argue, that agents were aware of or intentionally capitalized on Smith's vulnerabilities with regard to the duration and location of the interview. S*ee generally*, Doc. 28; *see also Garner*, 557 F.3d at 263 ("Because police had no reason to believe that Garner misunderstood the warnings, and because it is undisputed that the officers were otherwise reasonable and careful in giving the warnings and obtaining the confession, there is no basis for invalidating Garner's *Miranda* waiver").

*Defendant's maturity and educational background*

Considered separate and distinct from Smith's academic and learning deficiencies, the record shows Smith possesses both the requisite maturity and education to make a voluntary decision to waive his rights and submit to a polygraph interview. Indeed, Smith is a thirty-one-year-old adult, who has been able to hold a job, and presents no symptoms of mental illness or incapacity outside of those discussed above. (Doc. 28-3, at 4). Nothing in Dr. Wendt's report suggests Smith lacks maturity. *See generally*, *Id.* Further, nothing presented to this Court suggests

a reasonable agent would have reason to believe Smith lacked the maturity to waive his *Miranda* rights. *Al-Cholan*, 610 F.3d at 954 ("where the police had no reason to believe that the defendant misunderstood the warnings, . . . there is no basis for invalidating the *Miranda* waiver") (internal citations omitted).

Similarly, the materials submitted with his Motion to Suppress indicate Smith has the requisite educational capacities in this regard. To that end – Smith has a high school diploma. (Doc. 28-3, at 5). And while his school records indicate some degree of academic struggle during his formal schooling, there is no indication that Smith's level of education is insufficient for considerations of a *Miranda* waiver. *See, e.g.*, *Garner*, 557 F.3d at 277 (finding defendant had the requisite mental capacity to understand where defendant stated that he had a twelfth-grade education while his mother said he only completed the seventh-grade).

*Defendant's physical condition and mental health*

In tandem with the next inquiry as to if Smith was actually informed of his *Miranda* rights, his mental condition at the time of the polygraph interview is at the center of discussion. *See generally*, Docs. 28 and 30. As with the other factors, this inquiry into voluntariness is considered "primarily from the perspective of the police, such that where the police had no reason to believe that the defendant misunderstood the warnings, there is no basis for invalidating the *Miranda* waiver." *United States v. Musaibli*, 575 F. Supp. 3d 870, 879 (E.D. Mich. 2021) (citing *United States v. Ramamoorthy*, 949 F.3d 955, 965 (6th Cir. 2020)). However, where law enforcement has reason to believe that a defendant interviewee misunderstood the *Miranda* warnings or consequences of waiving the same, the totality of the circumstances may necessitate a finding that the waiver was not voluntarily made.

7

There is no material submitted to this Court that would promote a finding that the agents were operating under the belief, or that a reasonable agent would have surmised, Smith possessed inadequate mental faculties at the time of the interview to execute a valid *Miranda* waiver. Indeed, the agents confirmed with Smith he was able to competently understand English prior to handing him the waiver of rights form, which Smith ultimately signed. (Doc. 28, at Ex. A).

Further, and as more fully discussed in relation to Smith's comprehension of his signed waiver, Smith's actions heavily favor a finding that he was fully aware of the situation that he found himself in on September 24, 2021. Namely, Smith's less than forthright responses to initial questions during the execution of the search warrant on his home establishes by a preponderance of the evidence that Smith contemporaneously understood the circumstances of the law enforcement presence, the purpose, and the incoming investigation into his conduct. Specifically – Smith falsely stated that he no longer used social media platform Kik. (Doc. 30, at Ex. 1). He then provided a false Kik username. *Id*. Smith recanted both of these statements, eventually providing his actual Kik username. *Id*. Although also relevant to Smith's overall comprehension, these initial actions by Smith also show a person capable of understanding the situation presented and attempting to avoid law enforcement attention, rather than as someone who lacked the mental capacity to voluntarily waive his rights. *See, e.g.*, *Garner*, 557 F.3d at 265 ("Garner also engaged in conduct prior to being arrested that was more consistent with a person attempting to avoid being caught than a person who did not know what he was doing") (internal quotations omitted). Notwithstanding, there is certainly no indication that agents were, or should have been, aware of any mental vulnerabilities of Smith that would constitute their actions as coercive, or Smith's waiver as involuntary.

*Smith was informed of his rights*

The totality of the circumstances also establishes that Smith was sufficiently informed of *Miranda* rights. Smith argues the six seconds between the conclusion of the directions and his own affirmation that he had finished reviewing the "Advice of Rights" waiver was not enough time to adequately inform him of his rights. (Doc. 28, at 3). In doing so, Smith points to statements by agents regarding the quickness of Smith's review of the waiver. *Id*. at 2. However, this six-second window does not encapsulate the totality of the circumstances, nor does it accurately portray Smith's time reviewing the waiver.

First, the audio recording reveals Smith was made aware prior to receiving the waiver that the tablet contained a waiver of his *Miranda* rights. (Doc. 28, at Ex. A). Second, the audio recording does not establish that Smith had a mere six seconds with the waiver. Instead, it shows Smith received the tablet just prior to the conclusion of directions and it was not taken away until agents took the waiver from Smith to sign it themselves. *Id*.

Nevertheless, Smith's own submissions to this Court show he was aware of his rights. Namely, Smith is aware of *Miranda* due to his exposure to popular culture. (Doc. 28-3, at 7). Smith recited the core principles of *Miranda* to Dr. Wendt from memory. *Id*. Similarly, Smith was arrested two years prior, in 2019, where he was then read his rights. *Id*. When viewed in hand with agent's preface that Smith had to be read his rights prior to the commencement of the interview, Smith had a full appreciation of the rights he was waiving upon receiving the tablet. *Musaibli*, 575 F. Supp. 3d at 878 ("The iconic *Miranda* warnings that must precede police questioning of a person in custody have become embedded in our legal culture for nearly five decades"); *Dickerson v. United States*, 530 U.S. 428, 443 (2000) ("*Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture.").

Contrary to Smith's position, agents confirming with Smith that he reviewed the waiver represents an assurance that Smith did in fact understand his rights. And lastly, Smith was also reminded of his right to end the interview at his own will when he signed the "Consent to Interview with Polygraph" form. (Doc. 30-3). Again, nothing before this Court gives rise to a reasonable conclusion that agents suspected Smith's waiver of rights was involuntary. *Musaibli*, 575 F. Supp. 3d at 879.

In sum, the totality of the circumstances establishes that Smith was given his *Miranda* rights prior to the commencement of the polygraph interview, and that he voluntarily waived those rights, absent any coercive conduct on the part of law enforcement.

Comprehension

Comprehension, like voluntariness, is primarily viewed from the perspective of law enforcement. *Garner*, 557 F.3d at 263. Here, nothing presented to this Court indicates that law enforcement was, or rightly should have been, under suspicion that Smith was incapable of comprehending the consequences of signing a *Miranda* waiver.

First, the Government's argument (Doc. 30, at 9) is well-taken that Smith's intelligence is satisfactory to waive his *Miranda* rights. *Garner*, 557 F.3d at 277 (finding a revised IQ score of 76 was valid to waive rights); *Adams v. Haeberlin*, 404 F. App'x 11, 15 (6th Cir. 2010) (holding that a defendant with an IQ of 65 could voluntarily, knowingly, and intelligently waive his Miranda rights); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 815 (E.D. Mich. 2001) (finding that a defendant with an IQ score of 80 could validly waive his rights, and noting "[a] knowing relinquishment of Miranda rights can be found even where a defendant has only limited intellectual capacity").

More essential to the outcome is whether the agents were, or should reasonably have been, under the belief that Smith was unable to comprehend the consequences of a *Miranda* waiver.

10

*Garner*, 557 F.3d at 263. The Government argues Smith's attempts at deception establish agents were reasonable in assuming Smith was competent. (Doc. 30, at 7-9). Smith contends the Government's position circularly, and unfairly asks this Court to consider – as evidence against suppression – the very evidence he seeks to suppress. (Doc. 32, at 6). This Court finds Smith's position is too narrowly focused and ignores similar deception to the same end where Smith made false representations regarding his use of Kik. (Doc. 30, at Ex. 1). Indeed, this Court finds that the Eastern District of Michigan's analysis in *United States v. Farnsworth* to be instructive here. 2017 WL 3224966 (E.D. Mich. 2017). In *Farnsworth*, the defendant "received special education from kindergarten until the ninth grade . . . ultimately dropping out in the twelfth grade." *Id.* at *3. The defendant attempted to minimize the amounts of child porn he possessed to law enforcement, "more consistent with a person attempting to avoid being caught than a person who did not know what he was doing." *Id*. at *7 (quoting *United States v. Turner*, 157 F.3d 552 (8th Cir. 1998)). Like in *Farnsworth*, Smith's actions suggest that he was actively attempting to evade punishment, not that he was confused. (Doc. 30, at Ex. 1). Thus, even assuming for the sake of argument this Court finds Smith was not actually competent to comprehend his waiver of rights (which this Court does not so do), this Court finds Smith's actions are inconsistent with lacking mental capacity to validly comprehend a waiver of his rights, and even more so, the totality of the circumstances dispels any notion that agents were under the impression Smith was unable to comprehend the waiver. *See Garner*, 557 F.3d at 263.

As such, the Court finds, by a preponderance of the evidence, that Smith was competent to comprehend the consequences of the waiver of his rights, and further, that law enforcement was under the reasonable belief that Smith was competent to do the same. Because this Court finds

11

both the voluntariness and the comprehension dimensions of the waiver satisfied, the *Miranda* waiver was valid, and the motion (Doc. 28) must be denied.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Smith's Motion to Suppress (Doc. 28) be, and the same hereby is, DENIED.

        s/ *James R. Knepp II*
        UNITED STATES DISTRICT JUDGE